# RESCRIPT OPINIONS.

COMMONWEALTH *vs.* GILBERTO DINGUIS. No. 07-P-1902. March 31, 2009. *Sex Offender. Practice, Civil,* Sex offender. *Due Process of Law,* Sex offender. *Evidence,* Sex offender.

On November 4, 2004, the Hampden County district attorney filed a petition under G. L. c. 123A, § 12(*b*),[1] to commit the defendant, Gilberto Dinguis, as a sexually dangerous person (SDP). At the time, the defendant had eight days left on a sentence for two convictions of indecent assault and battery on children under age fourteen, his eight year old niece and his girlfriend's ten year old daughter. The following day, the Commonwealth sought a temporary commitment order pursuant to G. L. c. 123A, § 12(*e*),[2] to prevent the defendant's release pending a probable cause hearing.

The defendant moved to dismiss the petition on the ground that the Hampden County house of correction (HOC) had failed to give the district attorney six months' notice of his impending release as required by G. L. c. 123A, § 12(*a*).[3] He also moved, under § 12(*e*), for release pending the probable cause hearing. A judge denied both motions. After a hearing on November 18, 2004, the judge found probable cause to support the SDP petition and temporarily committed the defendant. Later, in September, 2005, the judge committed him as an SDP.

On appeal, the defendant again claims that the HOC's failure to give six months' notice of his release warrants dismissal of the SDP petition. He also argues that the judge erred in finding him likely to reoffend if not confined.[4] We affirm.

[1]Section 12(*b*), inserted by St. 1999, c. 74, § 8, provides, in pertinent part, "[T]he district attorney . . . may file a petition alleging that the prisoner . . . is a sexually dangerous person and stating sufficient facts to support such allegation in the superior court . . . ."

[2]Section 12(*e*), inserted by St. 1999, c. 74, § 8, states, "If the person named in the petition is scheduled to be released . . . at any time prior to the court's probable cause determination, the court, upon a sufficient showing based on the evidence before the court at that time, may temporarily commit such person to the treatment center pending disposition of the petition. The person named in the petition may move the court for relief from such temporary commitment at any time prior to the probable cause determination."

[3]Section 12(*a*), as amended by St. 2004, c. 66, §§ 7-9, states, "Any agency with jurisdiction of a person who has ever been convicted of . . . a sexual offense as defined in section 1, regardless of the reason for the current incarceration . . . shall notify in writing the district attorney of the county where the offense occurred and the attorney general six months prior to the release of such person . . . ."

[4]In one sentence of his brief, the defendant also contends that G. L. c. 123A, § 12(*b*), which merely authorizes a district attorney to commence an SDP proceeding, is so "vague and overbroad in procedure, in purpose, and in application that it violates his

*Discussion.* a. *Notice.* Although the record does not reveal the precise date on which the district attorney received the notice required by § 12(*a*), the Commonwealth agrees that it received that notice much closer to the defendant's release date than six months.[5] Our analysis proceeds on that agreement.

There can be no doubt that G. L. c. 123A implicates fundamental liberty interests, thereby triggering due process protections, *Commonwealth* v. *Bruno*, 432 Mass. 489, 502-503 (2000), and requiring "strict adherence to the time frames set forth in the statute." *Commonwealth* v. *Kennedy*, 435 Mass. 527, 531 (2001). The notice provisions of § 12(*a*) acknowledge those liberty interests by "ensuring that the Commonwealth will be in a position to complete most, if not all, of the G. L. c. 123A proceedings before the inmate's discharge." *Id.* at 530-531. The important role § 12(*a*) plays in advancing a defendant's liberty interests led the Supreme Judicial Court, on more than one occasion, to "remind the relevant agencies . . . to provide six months' notice as required . . . ." *Commonwealth* v. *Gagnon*, 439 Mass. 826, 832 n.8 (2003).

That said, and while we do not condone a violation of § 12(*a*), dismissal is not an appropriate remedy for several reasons. First of all, as the defendant acknowledges, the district attorney's power to file an SDP petition pursuant to G. L. c. 123A, § 12(*b*), is not restricted textually or otherwise to instances in which notice of impending release has been given in accordance with § 12(*a*).

Second, no provision of G. L. c. 123A, § 12, makes mention of dismissal as a remedy for violations of § 12(*a*).[6] Instead, § 12(*e*) provides a different remedy, that of moving for release pending a probable cause hearing, as the defendant did here.[7] See *Kenney, petitioner*, 66 Mass. App. Ct. 709, 712

---

constitutional [rights] under the Fourteenth Amendment of the United States Constitution and Article 26 of the Massachusetts Declaration of Rights." That unsubstantiated, superficial claim does not rise to the level of adequate appellate argument, and we do not consider it. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

[5]In its memorandum filed in lieu of a brief, the Commonwealth stated, "While it is true that pursuant to G. L. c. 123A, § 12(*a*), the HOC was required to give the District Attorney's Office six months notice of the defendant's impending release from custody, it did not do so in this case." From the record, it appears that the notice actually came quite close to the day of the defendant's anticipated release. The Commonwealth's November 4, 2004, petition states, "The Commonwealth has been notified by the Hampden County Jail that the defendant's release date from his sentence of incarceration in indictment #01-737-2 has been accelerated to November 13, 2004 from November 28, 2004." At the November 5 hearing, the prosecutor stated, "We were just recently advised that the defendant's scheduled release date was again moved up, and my understanding is that his release date is November 13th; that's a week from tomorrow." And the Commonwealth further stated in its memorandum filed here, "The report of the Qualified Examiner, Dr. Carol Feldman, was received by the prosecutor on November 3, 2004, and the prosecutor filed the Commonwealth's petition, the next day, November 4, 2004."

[6]Contrast with Mass. R. Crim. P. 36(b)(1), 378 Mass. 909 (1979): "If a defendant is not brought to trial within the time limits . . . he shall be entitled upon motion to a dismissal of the charges."

[7]The judge did not err in denying the defendant's motion to dismiss, as sufficient evidence showed that temporary detention was warranted. *Commonwealth* v. *Gagnon*, *supra* at 830 (denial of motion to dismiss reviewed for legal error or abuse of discretion).

(2006) ("Section 12[e] of the statute does not contemplate dismissal of the petition as a remedy for delay").

Third, as the defendant also acknowledges, even if the HOC had complied with § 12(a), the statute did not require the Commonwealth to file its petition six months prior to the defendant's release. *Commonwealth* v. *Gagnon, supra* at 827, 832 (delay in filing petition to commit defendant until one and one-half months before his release did not warrant dismissal). Thus, proper notice would not necessarily have afforded the defendant an earlier probable cause hearing.

Finally, after trial, the defendant was found to be a SDP. There is no basis in the record for inferring that a trial held before expiration of his underlying sentence would have produced a different result. Thus, any violation of § 12(a) cannot be said to have produced a loss of liberty that would not have occurred if the statutorily required notice had been given.[8]

b. *Likelihood of reoffending.* To obtain an SDP commitment, the "Commonwealth must prove beyond a reasonable doubt that the defendant 'suffers from a mental abnormality or personality disorder which makes [him] likely to engage in sexual offenses if not confined to a secure facility.' " *Commonwealth* v. *Nieves*, 446 Mass. 583, 587 (2006), quoting from G. L. c. 123A, § 1. A judge makes this determination "on a case-by-case basis, by analyzing a number of factors, including the seriousness of the threatened harm, the relative certainty of the anticipated harm, and the possibility of successful intervention to prevent the harm." *Commonwealth* v. *Boucher*, 438 Mass. 274, 276 (2002).

Here, the judge credited testimony that multiple risk factors apply to the defendant, including the following: sexual contact with two prepubescent girls; a sexual offense after incarceration for a similar sexual offense; a pattern of deviant sexual arousal toward children; and failure to complete sex offender treatment. The judge went on to find, beyond a reasonable doubt, that the defendant could "reasonably be expected to engage in sexual offenses if not confined to a secure facility." We are not persuaded that, in so doing, the judge improperly credited testimony of the Commonwealth's expert or otherwise committed an error of law, nor are we persuaded that the judgment was unsupported by the clear weight of the evidence. See *Commonwealth* v. *Bradway*, 62 Mass. App. Ct. 280, 291 (2004) (affirming trial court's SDP determination given factual findings that included pedophilia diagnosis and history of prior offenses).

*Judgment affirmed.*

*Anna M. Lembo* for the defendant.

*Marcia B. Julian*, Assistant District Attorney, for the Commonwealth.

---

[8]Obviously, a very different set of considerations would apply in, say, a civil suit brought by a person who was determined not to be an SDP after trial, or even earlier, if that person were detained beyond expiration of his sentence because a § 12(a) violation left too little time to complete the statutory processes before the sentence ended.